**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LOANCRAFT, LLC,

       Plaintiff,

v.                                        Case No. 12-10138

FIRST CHOICE LOAN SERVICES, INC.,

       Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S "MOTION TO DISMISS
PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, TO STAY THE MATTER
PENDING MEDIATION" AND CANCELLING MARCH 7, 2012 MOTION HEARING**

      In this breach-of-contract action, Plaintiff LoanCraft, LLC, claims that Defendant

First Choice Loan Services, Inc., has defaulted its obligation to pay for Plaintiff's loan

fulfillment services as required under the Service Agreement executed by the parties on

November 30, 2010.  Plaintiff also alleges that Defendant has neglected to pay fees due

under the parties' December 1, 2010 Space Agreement, under which Plaintiff agreed to

provide office space to Defendant's personnel.  Presently before the court is

Defendant's motion to dismiss or stay the suit based on Plaintiff's failure to follow

dispute resolution procedures outlined in both contracts.  Plaintiff has filed a response,

and the court concludes a hearing is not necessary.  *See* E.D. Mich. LR 7.1(e)(2).

Because the Service Agreement and Space Agreement require alternative dispute

resolution as a condition precedent to Plaintiff's ability to seek judicial resolution of its

claims, the court will grant Defendant's motion and dismiss this case without prejudice.

Defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(6),

arguing that the complaint fails to state a claim upon which relief can be granted based

on the following provision of the parties' agreements:

8.3.   Dispute Resolution

(a)      In the event of a dispute, the parties shall work together in
good faith to resolve the matter through informal means, including timely
escalation of the dispute to senior management having full settlement
authority.  If the dispute remains unresolved for thirty (30) days, the parties
will use a mutually agreed non-binding alternative dispute resolution
technique.  Either party may seek a judicial resolution only after completion
of the foregoing procedures; provided, however, that either party may seek
injunctive or other equitable relief at any time.

(b)      The parties agree to continue performance of their respective
obligations under this Agreement, to the extent reasonably possible, during
the course of the attempts to resolve the dispute unless and until such
obligations are terminated or expire in accordance with the provisions hereof.

(Service Agreement § 8.3, Dkt. # 1, at 27; *accord* Space Agreement § 7.3, Dkt. # 1, at

42.)  According to Defendant, Plaintiff's complaint does not "state a claim to relief that is

plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), because

Plaintiff's admitted failure to pursue alternative dispute resolution as outlined in these

procedures is fatal to its claim on the merits, *see, e.g.*, *N-Tron Corp. v. Rockwell*

*Automation, Inc.*, Civil Action No. 09-0733-WS-C, 2010 WL 653760, at *5 (S.D. Ala.

Feb. 18, 2010).[1]

_____

[1]Plaintiff counters that its complaint successfully states a claim because it alleges
Plaintiff "performed all its obligations and has satisfied all conditions under the
agreements" and does not specifically aver whether or not the parties pursued
alternative dispute resolution prior to filing.  (Pl.'s Br. Opp'n Mot. Dismiss 7-8, Dkt. # 6.)
This assertion is soundly rejected by the several cases, like *N-Tron*, that dismiss a
complaint based on a plaintiff's failure to satisfy pre-suit dispute-resolution
requirements.  *See, e.g.*, *Two Guys, Inc. v. Nick-N-Willy's Franchise Co.*, No. C11-
5537BHS, 2011 WL 4596692 (W.D. Wash. 2011).  Plaintiff's further contention that

The interpretation of the dispute-resolution provisions and their effect on
Plaintiff's claims is a matter of state law in this diversity-of-citizenship action.  *See
Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003) (noting that federal court
applies law of forum state when sitting in diversity).  Choice-of-law clauses contained in
both contracts designate New Jersey law as controlling.  (Service Agreement § 8.4;
Space Agreement § 7.4.)  *See In re Dow Corning Corp.*, 419 F.3d 543, 548 (6th Cir.
2005) ("[B]oth Michigan choice-of-law rules and general equitable choice-of-law policies
support enforcing parties' agreed-upon choice-of-law clauses absent any strong public
policy concerns to the contrary.").[2]

---

Defendant's motion should fail because it is unsupported by "affidavits or other evidence
establishing that this alleged condition has not been met," (Pl.'s Br. Opp'n Mot. Dismiss
8 n.2), impermissibly seeks to shift Plaintiff's burden of pleading factual allegations that
"plausibly give rise to an entitlement to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.
1937, 1950 (2009).  In its response to Defendant's motion, Plaintiff admits the parties
have not engaged in any alternative dispute resolution.  (*See* Pl.'s Br. Opp'n Mot.
Dismiss 15.)  Therefore, despite Plaintiff's allegations that it has attempted to alert
Defendant's management to its claims by sending invoices and notices of default, (*id.* at
6-7), it is uncontested that Plaintiff has not fully complied with the Agreements' dispute-
resolution procedures.  (*See* Service Agreement § 8.3(a) ("If the dispute remains
unresolved for thirty (30) days, the parties will use a mutually agreed non-binding
alternative dispute resolution technique."); Space Agreement § 7.3(b) (same).)

[2]Both parties invoke the Federal Arbitration Act ("FAA") and related federal case
law to bolster their positions.  In the Sixth Circuit, it remains an open question if, and
when, non-binding alternative dispute resolution proceedings of the sort contemplated
by the Agreements constitute "arbitration" within the meaning of the FAA.  *Compare
Fisher v. GE Med. Sys.*, 276 F. Supp. 2d 891, 893-94 (M.D. Tenn. 2003) (FAA covers
agreement to mediate), *with Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*,
524 F.3d 1235, 1238-41 (11th Cir. 2008) (mediation is not FAA arbitration).  The court
need not grapple with this issue, as Defendant seeks, and the court will grant, dismissal
of Plaintiff's complaint based on contract law.  *See Tattoo Art, Inc. v. TAT Int'l, LLC*, 711
F. Supp. 2d 645, 650 n.2 (E.D. Va. 2010).

Under general contract principles followed in New Jersey courts, dismissal is appropriate when "a contract . . . makes mediation a condition precedent to filing a lawsuit." *Brosnan v. Dry Cleaning Station Inc.*, No. C-08-02028 EDL, 2008 WL 2388392, at *1 (N.D. Cal. June 6, 2008); *accord Cohen v. Cohen*, No. FM-13-1460-04B, 2007 WL 2081471, at *3 (N.J. Super. Ct. App. Div. July 23, 2007). *See generally Interwave Tech., Inc. v. Rockwell Automation*, No. Civ.A.05-398, 2005 WL 3605272, at *7 n.1 (E.D. Pa. Dec. 30, 2005) (collecting cases). Defendant persuasively argues that "non-binding alternative dispute resolution" is a prerequisite to litigation of a "dispute" over the Service Agreement and Space Agreement, given the contracts' statement that "[e]ither party may seek a judicial resolution *only after* completion" of the designated procedures. (Service Agreement § 8.3 (emphasis added); Space Agreement § 7.3 (emphasis added).) Plaintiff tries to avoid this conclusion by way of two counter-arguments, both of which fail.

First, Plaintiff contends that the dispute-resolution provision is too unspecific to constitute a binding condition precedent, but rather "is nothing more than an unenforceable agreement to agree." (Pl.'s Br. Opp'n Mot. Dismiss 10 (internal quotation marks omitted) (relying on *Tansey v. Suckoneck*, 130 A. 528, 529 (N.J. 1925)).) Contrary to Plaintiff's assertion, the parties' decision not to designate a specific method of alternative dispute resolution in their procedures does not indicate the "[a]bsence of [an] essential term[]" providing "persuasive evidence that the parties did not intend to be bound" by the contracts. *Morales v. Santiago*, 526 A.2d 266, 269 (N.J. Super. Ct. App. Div. 1987). Plaintiff's complaint relies on the fact that the Service Agreement and Space Agreement are enforceable, and Plaintiff cites no authority that would allow a

4

court to strike an individual clause of an otherwise valid contract on the theory that the parties intended to be bound by some, but not other, provisions of their written agreement. *See Silverstein v. Keane*, 115 A.2d 1, 6 (N.J. 1955) ("[I]t will be presumed that the parties [to a written contract] intended to make a binding and enforceable obligation and as between two equally reasonable constructions the court should adopt the one which makes the contract valid as opposed to one reaching a contrary result.").

The fact that the Agreements allow Plaintiff and Defendant the flexibility to tailor their chosen alternative dispute resolution method to an individual disagreement does not negate the mandatory language "*will use* a mutually agreed non-binding alternative dispute resolution technique" and "may seek a judicial resolution *only after* completion of the foregoing procedures." (Service Agreement § 8.3(a) (emphasis added); Space Agreement § 7.3(a) (emphasis added).) This principle has been recognized by other courts enforcing similarly worded conditions requiring pre-suit alternative dispute resolution. *See Tattoo Art, Inc.*, 711 F. Supp. 2d at 649-50 ("mediation in Virginia Beach, Virginia"); *N-Tron Corp.*, 2010 WL 653760, at *3 ("non-binding third-party mediation"); *Brosnan*, 2008 WL 2388392, at *1 (mediation "for a minimum or [sic] four (4) hours"); *Valente v. Securitas Sec. Servs., U.S.A., Inc.*, No. FSTCV085008446S, 2011 WL 4510078, at *4 (Conn. Super. Ct. Sept. 9, 2011) ("appropriate escalation" of dispute after "meeting between management representatives").

Second, Plaintiff avers that its claims under the Service Agreement and Space Agreement are not "dispute[s]" within the meaning of the dispute-resolution clauses. Rather, Plaintiff maintains, they are "Events of Default" that provide grounds for terminating the contracts, (*see* Service Agreement § 7.2; Space Agreement § 6.2), and

5

are therefore outside of the dispute-resolution procedures, which contemplate an

ongoing business relationship between the parties, (*see* Service Agreement § 8.3(b)

("The parties agree to continue performance of their respective obligations under this

Agreement . . . ."); Space Agreement § 7.3(b) (same)).  As an initial matter, this

argument fails on its own terms.  Although Plaintiff sent Defendant a notice of default

under both the Service Agreement and Space Agreement, it has not terminated the

contracts, and it alleges that they will remain in effect until May 2012 and June 2012,

respectively.  (Complaint ¶¶ 29, 37, 46, 53.)  Indeed, Plaintiff's claim for damages

contemplates Defendant's continuing duty to perform consistent with subsection (b) of

the Agreements' dispute-resolution provision.  (*Id.* ¶¶ 41, 57.)

Moreover, the plain language of the Service Agreement and Space Agreement

do not support Plaintiff's position.  *See M.J. Paquet, Inc. v. N.J. Dep't of Transp.*, 794

A.2d 141, 152 (N.J. 2002) ("Generally, the terms of an agreement are to be given their

plain and ordinary meaning.").  The Agreements' dispute-resolution clause applies "in

the event of a dispute," and is not limited in any way based on the nature of the parties'

disagreement.  (Service Agreement § 8.3(a); Space Agreement § 7.3(a).)  Thus,

Plaintiff's allegations of nonpayment must be considered "dispute[s]" under the ordinary

meaning of that term.

Finally, Plaintiff urges that, should the court conclude that alternative dispute

resolution is a condition precedent to litigation, the proper course would be to stay this

action rather than dismiss it outright.  "When confronted with objections that plaintiffs

have initiated litigation without satisfying arbitration or mediation requirements, . . .

district courts are vested with discretion to determine whether stay or dismissal is

6

appropriate." *N-Tron Corp.*, 2010 WL 653760, at *7.  In the court's estimation, dismissal is the proper course of action in this case.  Plaintiff does not allege any harm from a dismissal without prejudice other than the "delay" and increase of "expense and burden" inimical to requiring the parties to pursue alternative dispute resolution—consequences that would inhere to the same degree with a stay.  *Cf. id.* at *8 (granting stay to allow parties to pursue contractually required mediation when statute of limitations had run on the plaintiff's claims).

Plaintiff's invocation of the FAA's preference for stays over dismissals is similarly unavailing.  *See, e.g.*, *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) ("[T]he proper course of action when a party seeks to invoke an arbitration clause [under the FAA] is to stay the proceedings rather than to dismiss outright." (internal quotation marks omitted)).  Even if the FAA applied to the Agreements' dispute-resolution clause, *see supra* n.2, the stay remedy is not available to an applicant, like Plaintiff, who is "in default in proceeding with . . . arbitration."  9 U.S.C. § 3.  For these reasons, the court deems it appropriate to dismiss this action without prejudice.  Plaintiff remains free to file a complaint if, after pursuing alternative dispute resolution as required by the contracts, the parties are unable to resolve their dispute.

Accordingly, IT IS ORDERED that Defendant's "Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay the Matter Pending Mediation" [Dkt. # 3] is GRANTED.  The case is hereby DISMISSED.

IT IS FURTHER ORDERED that the March 7, 2012 Motion Hearing is CANCELLED.

7

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  February 27, 2012


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 27, 2012, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522